# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) M. MILES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-08-166-JHP |
| | ) |
| (1) JACK WASHINGTON, former | ) |
| Assistant Women's Basketball Coach, | ) |
| Carl Albert State College, in his official | ) |
| and individual capacities; | ) |
| (2) JEFF TADTMAN, former and | ) |
| current Women's Basketball Coach, | ) |
| Carl Albert State College, in both his | ) |
| official and individual capacities; | ) |
| (3) PHYLLIS PHILIPPART, former | ) |
| and current Vice-President of Student | ) |
| Affairs, Carl Albert State College, in | ) |
| both her official and individual | ) |
| capacities; | ) |
| (4) MIKE ST. JOHN, former and | ) |
| current Athletic Director, Carl Albert | ) |
| State College, in both his official and | ) |
| individual capacities; | ) |
| (5) STATE OF OKLAHOMA, by | ) |
| and through the Board of Regents of | ) |
| Carl Albert State College, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court are Defendants Jeff Tadtman, Phyllis Philippart, Mike St. John, and the State of Oklahoma's Partial Motion to Dismiss [Docket No. 19], and Plaintiff M. Miles' Response in Opposition. For the reasons stated below, Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

1

Plaintiff M. Miles transferred to Carl Albert State College ("Carl Albert") in the fall of 2006 to attend school and play basketball. At that time, Defendant Jack Washington had recently been hired by Carl Albert as an assistant women's basketball coach and was living in the boys' dorm as part of his compensation. Washington's stepdaughter was also a member of the Carl Albert basketball team. On September 8, 2006, Washington and Miles both attended a student party in the boys' dorm. At the party, Washington gave Miles a drink containing Red Bull and gin and Miles claims she started feeling funny as she drank it. Later that night, Washington allegedly raped her in his door room.

The following day Miles told her roommate about the rape and the two decided they would tell the head basketball coach, Defendant Jeff Tadtman, after practice the next day. On Sunday, September 10th Miles told Tadtman about the rape. Tadtman immediately confronted Washington about it and Washington denied the allegations. Tadtman told Miles that if she wanted to report the rape it would be trouble for her. Tadtman informed Miles that he would address the situation in the morning. The next morning, Tadtman reported the incident to Defendant Mike St. John, Carl Albert's athletic director. St. John then reported the incident to Defendant Phyllis Philippart, the Vice-President of Student Affairs.

Later that day, Washington was fired for drinking alcohol with students. Washington told some of the students about his termination which caused several students to become very upset with Miles. That evening a female and a male basketball player came to Miles' dorm room. The female player told Miles that if she was just lying to ruin someone's life, she was going to "beat her down." The housing director made the two students leave. Later the same evening, seven players from the women's basketball team went to Miles' dorm room and began

2

to beat on the door, trying to break it down. The players were screaming threats at Miles. Once the players were finally forced to leave by Tadtman and campus police, the housing director recommended that Miles and her roommate leave for the weekend and come back once the other players have had a chance to calm down. The next day, Miles received a text message from another player which stated that Washington's stepdaughter and other members of the team still "want to kill you." Miles never returned to Carl Albert. On October 4, 2006, Miles obtained a protective order against three girls, including Washington's stepdaughter, who had been making threats to Miles' life. At the hearing on the protective order, Tadtman and St. John accompanied the girls accused of making the threats and throughout the proceeding expressed their disgust and displeasure with Miles and her mother.

Miles sued Washington, Tadtman, St. John, Philippart, and Carl Albert alleging ten (10) different causes action. Those claims include: 1) Title IX action against Carl Albert for being deliberately indifferent to the harassment Miles experienced pursuant to 20 U.S.C. § 1681, seeking actual and punitive damages against Carl Albert; 2) Title IX action against Carl Albert for retaliating against Miles for reporting the rape pursuant to 20 U.S.C. § 1681, seeking actual and punitive damages against Carl Albert; 3) Deprivation of her rights under the Equal Protection
Clause of the Fourteenth Amendment against all Defendants in their official and individual capacity for being deliberately indifferent to the sexual harassment Miles allegedly suffered and allowing a hostile environment to exist, pursuant to 42 U.S.C. § 1983; 4) Deprivation of her First Amendment Right to Free Speech against all Defendants in their official and individual capacity for retaliating against Miles for reporting the rape, pursuant to 42 U.S.C.

§ 1983; 5) Governmental Tort Claim against Carl Albert for negligently hiring Washington; 6) Governmental Tort Claim against Carl Albert for negligently supervising Washington; 7) Governmental Tort Claim against Carl Albert for negligently retaining Washington; 8) Governmental Tort Claim against Carl Albert for negligent infliction of emotional distress; 9) Intentional Infliction of Emotional Distress against Washington, Tadtman, and St. John, individually; and 10) Breach of implied contract against Carl Albert.

Defendants filed a Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendants allege that Miles has not stated a claim upon which relief can be granted in regard to the Title IX sexual harassment claim, the Title IX retaliation claim, the § 1983 claims against all Defendants in their official capacity, the § 1983 claim against Tadtman, Philippart, and St. John in their individual capacity, the negligence claim against Carl Albert, the negligent infliction of emotional distress claim, and the intentional infliction of emotional distress claim against Tadtman and St. John.

## **DISCUSSION**

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a claim for relief on the basis that it fails to state any claims upon which relief may be granted. In undertaking a Rule 12(b)(6) analysis, the Court accepts all well-pleaded allegations in a complaint as true and construes them in the light most favorable to the plaintiff. *See Ridge at Redhawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In order to survive a 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1974 (2007). This does not mean the factual allegations themselves must be plausible, rather it means that relief must follow from the

facts alleged. *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). A complaint that omits some necessary facts may still satisfy this requirement "so long as the court can plausibly infer the unarticulated assumptions." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). The factual allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965. The Court will address each of the disputed claims in turn.

I. Title IX Sexual Harassment

In her first cause of action, Plaintiff alleges that Defendant Carl Albert is liable for sexual harassment in violation of 20 U.S.C. § 1681 (Title IX). An educational institution is not vicariously liable to its students under Title IX for all sexual harassment caused by its teachers. *Escue v. Northern Oklahoma College*, 450 F.3d 1146, 1152 (10th Cir. 2006). Rather, an educational institution is only liable for its own misconduct. *Id*. "A school district may be liable under Title IX provided it (1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school." *Rost v. Steamboat Springs RE-2 School Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008).

Defendant argues that Plaintiff has made no allegations that Carl Albert had actual notice of Washington's behavior before he committed the rape and that Plaintiff cannot establish that Carl Albert acted with deliberate indifference. However, in her Response Brief, Plaintiff alleges that Tadtman and others at the school knew that Washington was partying with female students on campus and inappropriately interacting with female students prior to his rape of Plaintiff. Additionally, Plaintiff alleges that Carl Albert created an atmosphere that allowed Washington to

live, party, and inappropriately interact with students, and eventually this atmosphere led to her rape. *See Simpson v. University of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007) (finding that it can be deliberate indifference if a school fails to provide adequate training that is obviously necessary for the implementation of a program and that an official policy of the school can result from a situation where the school exercises significant control over the harasser and the environment in which the harassment occurs). Based on the allegations contained in Plaintiff's Complaint and Response Brief,[1] she has raised her right to relief above the speculative level and has stated a claim that is plausible on its face.

II. Title IX Retaliation

Plaintiff's second cause of action alleges that Carl Albert retaliated against her for reporting the sexual harassment in violation of Title IX. Carl Albert argues that this claim must be dismissed because Carl Albert took no adverse action toward Plaintiff after she reported the harassment. According to Carl Albert, the only action that could amount to retaliation in violation of Title IV was taken by students whose conduct can not be attributed to the school.

The United States Supreme Court has recognized a private cause of action under Title IX for retaliating against a person because that person has reported sex discrimination. *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 172-73 (2005). The Tenth Circuit, along with other courts, has held that Tittle VII of the Civil Rights Act of 1964 "is 'the most appropriate analogue when defining Title IX's substantive standards.' " *Roberts v. Colorado State Bd. Of Agriculture*, 998 F.2d 824, 832 (10th Cir. 1993) (*quoting Mabry v. State Bd. Community Colleges &*

---

[1] The Court may consider additional arguments contained in a response brief to a motion to dismiss as long as it is consistent with the facts and theories advanced in the complaint. *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001)

*Occupational Educ.*, 813 F.2d 311, 316 n.6 (10th Cir. 1987)). Accordingly, the Court shall consider relevant Title VII case law in determining whether Plaintiff has sufficiently stated a claim under Title IX.

The actions of the students who threatened Plaintiff after she reported the rape are insufficient to establish that Carl Albert took some form of adverse action toward Plaintiff. The students are not agents of the school and their actions can not be considered the actions of the school. *See Ross v. Corporation of Mercer University*, 506 F.Supp.2d 1325, 1361 (M.D. Ga. March 30, 2007) (holding that evidence of threatening and other intimidating actions of university students was insufficient to establish that the university retaliated against a student who reported sex discrimination). However, Carl Albert can be liable for retaliation under Title IX if it orchestrated the harassment by the students or knew of the harassment and acquiesced in it in such a manner as to condone or encourage the harassment. *See Gunnel v. Utah*, 152 F.3d 1253, 1265 (10 th Cir. 1998) (holding that an employer may be liable under Title VII for the retaliatory harassment of the plaintiff's co-workers if "its supervisor or management personnel either (1) orchestrate the harassment or (2) know about the harassment and acquiesce in it in such a manner as to condone or encourage the coworkers' actions.") In her Complaint and Response Brief, Plaintiff alleges that Defendants warned her that going forward with her report would be trouble, knew of the harassment that occurred in Plaintiff's dorm, did not take sufficient actions to prevent the harassment, and accompanied the harassing students to court and supported the students while acting disgusted with Plaintiff during the protective order hearing. These allegations are enough for the Court to find that it is plausible that Defendants could be found to have condoned or orchestrated the student harassment of Plaintiff.

III. <u>Section 1983 Official Capacity Claims</u>

In her Response Brief, Plaintiff confesses that her third and fourth cause of action pursuant to 42 U.S.C. § 1983 should be dismissed as to all Defendants in their official capacities.

IV. <u>Section 1983 Individual Capacity Claims</u>

Plaintiff's third and fourth causes of action also allege two separate § 1983 claims against Defendants in their individual capacity. Plaintiff alleges that her right to equal protection was violated because Defendants were deliberately indifferent to the sexual harassment she suffered and allowed a hostile environment to exist after she reported the rape. Additionally, Plaintiff alleges that her First Amendment Right was violated when she was retaliated against for reporting her rape which is speech protected by the Constitution. Title IX does not preempt a § 1983 claim to enforce a constitutional claim arising from the same set of facts. *Seamons v. Snow*, 84 F.3d 1226, 1233-34 (10 th Cir. 1996). While a violation of Title IX alone cannot serve as a basis for a § 1983 claim, the allegations made by Plaintiff addressed in sections I and II of this Order sufficiently state a cause of action under § 1983.

Defendants further argue that they are entitled to qualified immunity on Plaintiff's § 1983 claims. When analyzing a qualified immunity defense, the Court must undertake a two step process. First, the Court "must determine whether the plaintiff has asserted a violation of a constitutional or statutory right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996). Next, the Court must decide "whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right." *Id.* "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have

8

found the law to be as the Plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In order for a law to be "clearly established," the contours of the right must be sufficiently clear such that a reasonable officer would understand that his actions violate clearly established law. *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003).

Although qualified immunity is a question of law, *England v. Hendricks*, 880 F.2d 281, 283 (10th Cir. 1989), the Court must apply the law to the specific facts of this case. At this point in time, no discovery has been conducted and the Court does not have a factual record to rely on in making its determination. Because the specific facts of this case are crucial to the Court's ability to make a legal determination as to whether Defendants violated clearly established law, the Court finds it premature to rule on the qualified immunity issue until the facts are sufficiently established. To be clear, the Court is not finally and conclusively denying Defendants' entitlement to qualified immunity. Defendant is free to reurge the issue in a motion for summary judgment, however, the Court cannot make a proper ruling on the issue at this stage of the proceedings.

V. Negligent Supervision

Plaintiff's sixth cause of action alleges that Carl Albert negligently supervised Washington. In order to prevail on this claim, Plaintiff must establish that "at the critical time of the tortuous incident, the employer had reason to believe that the person would create an undue risk of harm to others. Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought." *New Hampshire v. Presbyterian Church*, 998 P.2d 592, 600 (Okla. 1999). The parties agree that this burden is

9

comparable to the actual knowledge prong of a Title IX claim. *See Escue v. Northern OK College*, 450 F.3d 1146, 1156 (10 th Cir. 2006). Previously in this Order, the Court found that Plaintiff had sufficiently alleged that Carl Albert had actual knowledge of Washington's tendencies. Based on the same allegations, the Court finds that Plaintiff has stated a claim for negligent supervision that is plausible on its face.

VI. Negligent Infliction of Emotional Distress

In her Response Brief, Plaintiff confesses that no independent cause of action for negligent infliction of emotional distress exists under Oklahoma law. Accordingly, Plaintiff's claim of negligent infliction of emotional distress is dismissed.

VII. Intentional Infliction of Emotional Distress

In her ninth cause of action Plaintiff asserts a claim for negligent infliction of emotional distress against Carl Albert. "To recover for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). Plaintiff alleges that discouraging Plaintiff from reporting the rape, failing to protect her after she reported it, failing to punish other students who threatened her, and supporting the other students at protective order hearing are actions of Defendants which constitute behavior that is so outrageous and extreme that they go beyond all possible bounds of decency. Plaintiff also states that she suffered severe emotional distress as a result of these actions. The Court finds that these allegations raise Plaintiff's right to relief above the mere speculative level, thus, Plaintiff's cause of action must survive Defendants'

Motion to Dismiss.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's § 1983 official capacity claims and Plaintiff's eighth cause of action for negligent infliction of emotional distress are dismissed. Defendants' Motion to Dismiss is GRANTED as to those claims and DENIED as to all other claims.

IT IS SO ORDERED this 2nd day of February, 2009.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma